IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GROVER D. JAMES, )
)
              Petitioner, )
)
v. )   Case No. 24-3176-JWL
)
TIM EASLEY,[1] )
)
             Respondent. )
)
_____)

**MEMORANDUM AND ORDER**

Petitioner, acting *pro se*, filed a petition for habeas corpus under 28 U.S.C. § 2254, by which he challenges his state-court convictions. For the reasons set forth below, the Court **denies** the petition.

**I.    Procedural Background**

After a jury trial in 2016 in state court in Kansas, petitioner was convicted of first-degree murder and criminal possession of a firearm, and he received a life sentence. In 2019, the Kansas Supreme Court affirmed the convictions. *See State v. James*, 309 Kan. 1280 (2019) (*James I*). The state district court subsequently denied petitioner's motion for

---

[1] Because petitioner has been transferred to a different facility, the Court has substituted as respondent his present custodian for his former custodian.

postconviction relief under K.S.A. § 60-1507, and the Kansas Supreme Court affirmed that ruling. *See State v. James*, 319 Kan. 178 (2024) (*James II*).

Petitioner initiated this habeas action in October 2024, and after being granted leave, he filed an amended petition in November 2024, in which he asserts four claims. By Memorandum and Order of December 2, 2024, the Court dismissed Claim One of the petition, involving the state district court's failure to hold an evidentiary hearing in petitioner's postconviction proceedings; and it dismissed Claim Three, asserting a violation of a defendant's right to be present, to the extent based on a violation of state law. *See James v. Langford*, 2024 WL 4930514 (D. Kan. Dec. 2, 2024) (Lungstrum, J.). With respect to the other claims, the Court set deadlines for respondent's answer and petitioner's traverse. Respondent filed his answer in March 2025, but petitioner did not file a traverse or reply brief by the ordered deadline of May 5, 2025. The matter is therefore ripe for ruling.

**II.    Governing Standards**

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides for consideration of a prisoner's writ of habeas corpus on the ground that "he is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). The petitioner must exhaust state court remedies. *See id.* § 2254(b), (c). Relief shall not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

2

by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See id.* § 2254(d). The standard is very strict, as explained by the Tenth Circuit:

> The KCOA [Kansas Court of Appeals] rejected this clam on the merits. Our review is therefore governed by the AEDPA, which erects a formidable barrier to federal habeas relief and requires federal courts to give significant deference to state court decisions on the merits.
>
> . . .
>
> Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta. A state court decision is "contrary to" the Supreme Court's clearly established precedent if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.
>
> A state court decision is an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule – like the one adopted in *Strickland* – the more leeway state courts have in reaching outcomes in case-by-case determinations. An *unreasonable* application of federal law is therefore different from an *incorrect* application of federal law.
>
> We may issue the writ only when the petitioner shows there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents. Thus, even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet – and it is – that is because it was meant to be. Indeed, AEDPA stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Accordingly, we will not likely conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy.

*See Frost v. Pryor*, 749 F.3d 1212, 1222-24 (10th Cir. 2014) (internal quotations and citations and footnote omitted).

In this case, the petition includes claims that petitioner's representation by various attorneys was constitutionally deficient. Petitioner's claims of ineffective assistance of counsel are governed by the deferential two-pronged standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, "[t]o establish ineffective assistance of counsel, [a] [d]efendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance." *See United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting *Strickland*, 466 U.S. at 687-88, 692). The test for establishing prejudice is as follows:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*See Strickland*, 466 U.S. at 694.

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

*See Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotations and citations omitted).

The Court's review under the AEDPA of a state court's application of *Strickland* is even more deferential:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*See id.* (internal quotations and citations omitted).

This Court ordinarily may not afford habeas review to claims that have not been presented and exhausted in the state courts. Habeas review of a federal claim is not available if the state courts' decision rested on a state-law ground that is independent of the federal question and adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Thus, a federal habeas claim is barred if the state court rejected the claim because the petitioner failed to meet a state procedural requirement. *See id.* at 729-30. Similarly, habeas review is barred if the claim was not presented to the state court and that court would now find the claim to be procedurally barred. *See id.* at 735 n.1. In Kansas state courts, issues not briefed and argued on appeal are deemed to have been abandoned. *See State v. Edwards*, 260 Kan. 95, 98 (1996).

In a case of procedural default on state-law procedural grounds, federal habeas review is barred unless the petitioner can satisfy one of two exceptions: either the petitioner must demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or he or she must demonstrate that "failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750. To show cause for a procedural default, the petitioner must show that some objective factor external to the defense impeded efforts to comply with the state's procedural rules. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel may provide the necessary cause, but that failure must rise to the level of a constitutional violation, and such a claim of ineffective assistance must have been presented as an independent claim to the state courts. *See id.* The fundamental-miscarriage-of-justice exception is "a markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (internal quotations and citation omitted). To establish such actual innocence, the petitioner "must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *See House v. Bell*, 547 U.S. 518, 536-37 (2006) (internal quotations and citation omitted).

### III.  Claim Three – Denial of Right to Be Present

In Claim Three, petitioner claims that the state district court violated his federal constitutional right to be present at all critical stages when it granted trial continuances in

his absence.² The United States Supreme Court has recognized that, even in situations where the defendant is not confronting witnesses or evidence against him (in which situations the Sixth Amendment's Confrontation Clause would apply), due process guarantees a defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if [the defendant's] presence would contribute to the fairness of the procedure." *See Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). "Although the Court has emphasized that this privilege of presence is not guaranteed when presence would be useless, or the benefit but a shadow, due process clearly requires that a defendant be allowed to be present to the extent that a fair and just hearing would be thwarted by [the defendant's] absence." *See id.* (internal quotations and citations omitted).

Petitioner exhausted this claim by asserting it on direct appeal from his convictions.³ The Kansas Supreme Court held that a continuance hearing is a critical stage at which a defendant has the right to be present, and it thus held that the trial court had violated petitioner's right by ordering continuances outside his presence. *See James I*, 309 Kan. at 1308-09. It further held, however, that any such error was harmless and thus did not provide a basis for reversal of the convictions. *See id.* at 1309-11.

---

² As noted above, the Court has already dismissed this claim to the extent based on a violation of state law.

³ Although the Kansas Supreme Court relied on Kansas law in denying this claim, it was addressing petitioner's claim under both the federal Constitution and under state law (it titled this section of the opinion "Constitutional Right to Presence"). In addition, as discussed below, the Kansas Supreme Court applied the federal constitutional harmless-error standard.

Respondent first argues in response to this claim that the Kansas Supreme Court erred in holding that the federal right to presence applies to the continuance hearings in this case. This Court agrees that the Kansas Supreme Court did not rely on any federal caselaw for that holding. *See James I*, 309 Kan. 1308-09 (citing *State v. Wright*, 305 Kan. 1176, 1178 (2017)); *Wright*, 305 Kan. at 1178 (citing *State v. Dupree*, 304 Kan. 43 (2016)); *Dupree*, 304 Kan. at 49-50 (citing state statute and *State v. Brownlee*, 302 Kan. 491, 508 (2015)); *Brownlee*, 302 Kan. at 508 (because the State conceded that presence was required under state statute, the court did not address whether presence at a continuance hearing was required under the federal Constitution). Respondent has not cited any authority of his own, however, to support the argument that a continuance hearing is not a critical stage requiring the defendant's presence. To the contrary, the federal constitutional standard could arguably be satisfied here with respect to a continuance hearing because, as the Kansas Supreme Court noted, a defendant's agreement may be relevant to the trial court's decision and the resulting effect on the speedy trial clock, in which case the defendant's presence would not be useless. This Court need not decide this issue, however, because even if a violation is assumed here, as it was by the Kansas Supreme Court, there is no basis to disturb that court's conclusion that any violation constituted harmless error.

The United States Supreme Court has recognized that a claim of a violation of the right to be present at critical stages is subject to a harmless-error analysis. *See Rushen v. Spain*, 464 U.S. 114, 117-18 & n.2 (1983); *see also United States v. Gomez*, 67 F.3d 1515, 1528 (10th Cir. 1995). The applicable harmless-error standard for a constitutional violation is whether the error was harmless beyond a reasonable doubt, meaning that it is beyond a

8

reasonable doubt that the error did not contribute to the verdict obtained. *See Chapman v. California*, 386 U.S. 18, 24 (1967). The Kansas Supreme Court applied these same standards in rejecting petitioner's presence claim in *James I*, as it conducted a harmless-error analysis based on the *Chapman* standard, considering whether beyond a reasonable doubt the error did not affect the outcome of the trial. *See James I*, 309 Kan. at 1309 (citing, *inter alia*, *State v. Ward*, 292 Kan. 541 (2011)); *Ward*, 292 Kan. at 569 (recognizing harmless-error standard from *Chapman*). Thus, the Kansas Supreme Court did not fail to apply the correct standard to petitioner's constitutional claim.

Moreover, the Court concludes that the Kansas Supreme Court did not unreasonably apply that standard or unreasonably determine any facts. As that court noted, the record included evidence that petitioner's attorney represented to the trial court that he had consulted with petitioner and at least implied that petitioner had agreed to seek the continuances; that petitioner had told the trial court on one occasion that he agreed to a continuance to accommodate the court's calendar; and that petitioner had in fact signed a form requesting a separate continuance. Thus, the state court reasonably concluded that petitioner had not consistently asserted a violation of his speedy trial rights and that there was no indication of prejudice arising from petitioner's absence at any continuance hearing.

In his petition, petitioner asserts this claim only conclusorily, without addressing the opinion of the Kansas Supreme Court or the harmlessness issue (and petitioner failed to file a traverse). Accordingly, under the deferential standard required by the AEDPA, there

9

is no basis to disturb the state courts' rejection of this claim.[4]  This Court therefore denies Claim Three of the petition.

### IV. <u>Claims Two and Four – Ineffective Assistance of Counsel</u>

In Claims Two and Four of the petition, petitioner asserts claims of ineffective assistance of counsel under the Sixth Amendment.  In Claim Two, petitioner asserts that the performance by his original trial counsel, Bradley Sylvester, was constitutionally deficient because Mr. Sylvester requested trial continuances against petitioner's wishes that resulted in a violation of petitioner's speedy trial rights.[5]  In Claim Four, petitioner asserts that the performance of his subsequent trial counsel, Steve Mank, was constitutionally deficient in failing to pursue a motion to dismiss in the trial court based on speedy trial violations caused by the continuances sought by Mr. Sylvester.

---

[4] The United States Supreme Court has held that to obtain habeas relief, a petitioner must not only satisfy the AEDPA standard, he or she must also satisfy the Court's standard from *Brecht v. Abrahamson*, under which the petitioner bears the burden to show that the trial error had a substantial and injurious effect or influence on the verdict.  *See Brown v. Davenport*, 596 U.S. 118, 133, 134 (2022) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  Because petitioner has not addressed the issue of prejudice from his absence at hearings, he has not shown any effect on the verdict, and thus he has failed to satisfy this requirement for habeas relief as well.

[5] Petitioner does not make clear in his petition whether he is claiming a violation of speedy trial rights under the federal Constitution or speedy trial rights under Kansas statutory law.  As respondent notes, in arguing this claim to the Kansas Supreme Court, petitioner cited only Kansas statutory speedy trial rights.  Accordingly, the Court construes this claim consistent with the claim that petitioner properly exhausted, namely as a claim based on a violation of statutory speedy trial rights.  Petitioner has not claimed that any exception to the exhaustion requirement would apply here to allow a broader claim.

The Kansas Supreme Court denied these same claims in *James II*. *See James II*, 319 Kan. at 183-89. The court stated that it had already concluded in *James I* that there had been no speedy trial violation as a result of the continuances (and petitioner's absence from continuance hearings), and it held that petitioner was not entitled to relitigate that issue in his postconviction proceedings. *See id.* at 188-89. Accordingly, the court, applying *Strickland*'s two-prong test, concluded that petitioner had not shown that Mr. Sylvester's performance was deficient and that petitioner had suffered no prejudice from Mr. Sylvester's conduct. *See id.* at 189, 188. For the same reasons, the court rejected the claim with respect to the conduct of Mr. Mank. *See id.* at 189.

This Court concludes that petitioner has not provided any basis for this Court to disturb these rulings by the Kansas Supreme Court. That court identified and applied the applicable *Strickland* test; as discussed above, the court reasonably determined facts relating to petitioner's acquiescence to continuances; and based on those facts, the court's application of the *Strickland* test, rejecting petitioner's arguments under both prongs, was reasonable. In his petition, petitioner has asserted these claims only conclusorily, without addressing the Kansas Supreme Court's opinions (and he did not file a reply brief). Accordingly, under the doubly-deferential standard for ineffective-assistance claims under the AEDPA, this Court must conclude that petitioner has not met his burden to establish an entitlement to relief on these claims, which the Court therefore denies.

### V. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases states that the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[6] To satisfy this standard, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). Because it is clear that petitioner is not entitled to relief on the claims denied in this case, the Court denies a certificate of appealability in this case with respect to those claims.

IT IS THEREFORE ORDERED BY THE COURT THAT that the petition for habeas corpus pursuant to 28 U.S.C. § 2254 is hereby **denied**.

IT IS SO ORDERED.

Dated this 5th day of June, 2025, in Kansas City, Kansas.

/s/   John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge

---

[6] The denial of a Section 2254 petition is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).